IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BRENDA C. DUHON**                                                                  **PLAINTIFF**

**v.**                                                        **Civil Action No. 1:11cv334-HSO-RHW**

**JANET NAPOLITANO**
*Secretary, Dept. of Homeland Security*                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is a Motion for Summary Judgment [32] filed by Defendant Janet Napolitano, Secretary, U.S. Department of Homeland Security. Plaintiff Brenda C. Duhon has filed a Response [39] and Defendant a Reply [40]. After due consideration of the record, the submissions on file, and relevant legal authorities, the Court finds that Defendant's Motion [32] should be granted in part and denied in part. Plaintiff's Title VII disparate treatment and Title VII retaliation claim will proceed. Her Title VII hostile work environment claim, Title VII constructive discharge claim, 42 U.S.C. § 1981 claims, state law claims for intentional and negligent infliction of emotional distress, Freedom of Information Act, 5 U.S.C. §§ 552, *et seq*. ("FOIA") claim, and request for punitive damages will be dismissed.

## I. BACKGROUND

This dispute arises from Plaintiff Brenda C. Duhon's former employment with the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA"). Plaintiff seeks relief for alleged sex discrimination, hostile work

environment, retaliation, and constructive discharge, all pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and also pursuant to 42 U.S.C. § 1981. She further asserts intentional and negligent infliction of emotional distress claims. Plaintiff pleaded a claim pursuant to the FOIA and also sought punitive damages in her Complaint. She concedes that she is no longer pursuing her FOIA claim and request for punitive damages. Pl.'s Mem. [39] in Supp. of Resp. at p. 27.

FEMA employed Plaintiff as a temporary employee in the aftermath of Hurricane Katrina. Def.'s Mem. [33] in Supp. of Mot. for Summ. J. at p. 1. It hired her as a Community Relations Officer in October 2005, and on June 6, 2006, granted her a two year appointment as a Cadre On-Call Response Employee ("CORE"). Dep. of Brenda Duhon [32-1] at pp. 48-49, Ex. 1 to Def.'s Mot. [32] for Summ. J. As a CORE employee, Plaintiff was a Floodplain Management Specialist GS-9, working at the Mississippi Transitional Recovery Office, Mitigation Division, in Biloxi, Mississippi. Report of Investigation 07-00018 at p. 2, Ex. 4 to Dep. of Brenda Duhon [32-1].

Employees in the Mitigation Division, such as Plaintiff, were sent into the community to assess damage to property caused by Hurricane Katrina. Plaintiff contends that she was subjected to sex discrimination when her direct supervisor and his deputy announced at a staff meeting that female Mitigation Division employees were not permitted to travel into Hancock County, Mississippi, to conduct damage assessments unless accompanied by a male. Pl.'s Mem. [39] in

Supp. of Resp. at pp. 4-8. Plaintiff testified that this occurred during her first month of employment in the Mitigation Division. Dep. of Brenda Duhon [32-1] at pp. 11-13. Her second line supervisor acknowledges that management did not want females to go into Hancock County alone because of "life-safety issue[s]" and because "[w]e felt there were safer jobs that Brenda and Amber could be doing rather than be out on the front lines." Dep. of John LaBrune [32-3] at pp. 51-53, Ex. 3 to Def.'s Mot. [32] for Summ. J. Plaintiff complained to her direct supervisor about these remarks and then reported the matter to an EEO Counselor. She maintains that after the EEO Counselor intervened, female employees were permitted to go into the field alone to perform damage assessments, but she was thereafter subjected to retaliation and a hostile work environment.

During her two year CORE appointment, Plaintiff was subject to numerous disciplinary actions, received less than stellar performance evaluations, was placed on a performance improvement plan, was twice denied promotion to a GS-11 status federal employee, and was the only employee in the Biloxi Mitigation Division who did not have his or her position renewed. It is undisputed that Plaintiff lodged five EEO complaints against her supervisors, other members of management, and her coworkers, during the course of her two year employment.[1] Plaintiff was ultimately placed on non-duty, non-pay status approximately two months before her

---

[1] She first complained to the EEO Counselor regarding the remarks made at the June 2006 staff meeting. She thereafter filed four formal EEO Complaints, two in 2007 and two in 2008, all alleging sex discrimination, hostile work environment, and retaliation.

appointment expired for allegedly verbally and physically threatening a coworker. Dep. of Brenda Duhon [32-1] at pp. 73-78. She acknowledges that she then resigned "to ensure that her Standard Form 50 (Personal Action Form) would reflect that she resigned instead of being terminated, allowing [her] to qualify for other Federal Positions." Pl.'s Compl. [1] at p. 4.

## II. DISCUSSION

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671

F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B. Plaintiff's Claims

    1. Title VII Disparate Treatment Claim

Title VII provides that it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). Plaintiff alleges disparate treatment. Such treatment may be proved by

presenting direct evidence of gender discrimination or by providing circumstantial evidence of gender discrimination in accordance with the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Page v. U.S. Indus., Inc.*, 726 F.2d 1038, 1045 (5th Cir. 1984). "[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985); *see Portis v. First Nat'l Bank,* 34 F.3d 325, 328 (5th Cir. 1994).

"Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Robinson Prop. Grp.,* 427 F.3d 987, 992 (5th Cir. 2005). The presentation of credible direct evidence that discrimination motivated or was a substantial factor in an ultimate employment decision shifts the burden to the employer to show that, regardless of discrimination, the same decision would have been made. *Id.* For a remark to constitute direct evidence of discrimination, it must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 405 (5th Cir. 2001).

Plaintiff alleges that she was subjected to disparate treatment because "management refus[ed] to allow [her] to do her job as hired, [by] chang[ing] her job duties[,] and limit[ing] her for future opportunities." Pl.'s Mem. [39] in Supp. of Resp. at pp. 7-8. Plaintiff has presented direct evidence that supervisors at FEMA temporarily allowed only male Mitigation Division employees to travel into Hancock

County to conduct damage assessments, while female Mitigation Division employees were prohibited from doing so unless accompanied by a male.[2] Plaintiff testified in her deposition that during a June 2006 meeting with her direct supervisor, Greg Coulson, his deputy, David Clukie, and other employees of the Mitigation Division, Mr. Coulson and Mr. Clukie stated that "you females - you girls cannot go out to Hancock County by [y]ourselves without taking a man with [you] to protect [you] because men were bigger and stronger, more able to take care of themselves." Dep. of Brenda Duhon [32-1] at p. 11. Plaintiff contends that when she questioned Mr. Coulson and Mr. Clukie about their remarks, Mr. Coulson "told [her] that's the way it was." *Id.* at p. 12.

The Mitigation Section Chief, John LaBrune, Plaintiff's second line supervisor, acknowledged in his deposition that female Mitigation Division employees were prohibited from going into Hancock County alone to perform damage assessments. Dep. of John LaBrune [32-3] at pp. 51-53. Mr. LaBrune characterized the decision as "a life-safety issue" and stated, "we didn't want Brenda, nor did we want Amber, getting hurt out in the public." *Id.* at p. 52. He testified: "We felt there were safer jobs that Brenda and Amber could be doing rather than being out on the front lines," including "data-processing jobs [and] other building departments that needed help." *Id.* at p. 53. "[T]he purpose of Title VII [is] to overcome stereotyped thinking about the job abilities of the sexes . . . ."

---

[2]Plaintiff's disparate treatment claim is limited to this allegation. She does not, for instance, argue that she was denied promotion, suspended without pay, or that her position was not renewed because of her gender.

*Wilson v. Sw. Airlines, Co.,* No. CA-3-80-0680-G, 517 F. Supp. 292, 301 n.21 (N.D. Tex. 1981)(relying on *Diaz v. Pan Am. World Airways, Inc.,* 442 F.2d 385 (5th Cir. 1971)). Based on the foregoing, Plaintiff has proffered direct evidence of gender discrimination.

Defendant argues that Plaintiff's disparate treatment claim should nevertheless be dismissed because the decision to prohibit female Mitigation Division employees from going into Hancock County unaccompanied was not an ultimate employment decision. Def.'s Reply [40] at pp. 3-5. In the context of Title VII discrimination claims, only ultimate employment decisions "such as hiring, granting leave, discharging, promoting, and compensating" are actionable. *McCoy v. City of Shreveport,* 492 F.3d 551, 559 (5th Cir. 2007). A significant change in job duties can, however, constitute an ultimate employment decision, even where the change does not result in a decrease in pay, title, or grade. *Schirle v. Sokudo USA, LLC,* No. 11-10788, 484 Fed. App'x 893, 898 (5th Cir. 2012)("a significant diminishment of 'material responsibilities'" can constitute an ultimate employment decision)(citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)).[3]

---

[3]*See Alvarado v. Tex. Rangers,* 492 F.3d 605, 613 (5th Cir. 2007)("[T]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse – such as being less prestigious or less interesting or providing less room for advancement."); *Pegram v. Honeywell,* 361 F.3d 272, 282 (5th Cir. 2004)("an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action")(internal citation omitted); *Forsyth v. Dallas,* 91 F.3d 769, 774 (5th Cir. 1996); *Smith v. Texas Dept. of Water Res.,* 799 F.2d 1026, 1030 (5th Cir. 1986) (plaintiff established a *prima facie case* by producing evidence "that male engineering aides were historically allowed to perform their legitimate duties while female aids were required to also work as part-time secretaries."); *Hernandez v.*

Construing the evidence in the light most favorable to her, Plaintiff has offered sufficient summary judgment evidence to create a fact question regarding whether her job duties were significantly, albeit temporarily, diminished on the basis of her gender in such a way as to constitute an ultimate employment decision. Taking Plaintiff's version of events as true, and construing the evidence in her favor, a genuine issue of material fact therefore exists as to whether Plaintiff was subjected to disparate treatment in violation of Title VII. This claim should not be dismissed.

2. Title VII Hostile Work Environment Claim

To support a claim of hostile work environment by coworkers in violation of Title VII, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her gender; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). If the harasser is a supervisor with authority over the employee, only the first four elements need be shown. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

"Title VII does not prohibit all verbal or physical harassment in the

---

*Napolitano,* No. EP-10-CV-480-KC, 2012 WL 641033, *6 (W.D. Tex. Feb. 27, 2012)("A change in position or job duties can constitute an adverse employment action. However, the change must be such that the new position or responsibilities are objectively worse, such as being less prestigious or less interesting or providing less room for advancement.")(internal citations omitted).

workplace; it is directed only at '*dicriminat[ion]* . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting 42 U.S.C. § 2000e-2(a)). "Title VII does not protect employees from hostile conduct that is not based on their protected status." *Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 n.2 (5th Cir. 1996). "Sex-neutral hostile conduct cannot be used to support a hostile environment claim." *Id.* For a hostile work environment claim to survive summary judgment, "[t]he record must demonstrate that the abuse was motivated by the plaintiff's gender rather than by a personal dislike, grudge, or workplace dispute unrelated to gender." *Barnett v. Tree House Café, Inc.,* Civil Action No. 5:05-cv-195-DCB-JMR, 2006 WL 3545025, *12 (S.D. Miss. Dec. 8, 2006).

Plaintiff complains that she was singled out and subjected to unwarranted criticism and reprimands. She contends that she was treated differently than all other employees, male and female. Such sex-neutral conduct does not support a hostile work environment claim. Although Plaintiff contends that Mr. Coulson and Mr. LaBrune referred to her as a "bitch" and "the bitch of Mitigation," that Mr. LaBrune passed her in the hall on three or four occasions and "mumble[d] under his breath" the words "bitch" and "dyke," and that the chief of security referred to her as a "bitch," these alleged offensive comments alone are not severe or pervasive enough to constitute a hostile work environment based on Plaintiff's gender under current Supreme Court and Fifth Circuit precedent.

"Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68

(2006)(citing *Oncale,* 523 U.S. at 80)). "[W]orkplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale,* 523 U.S. at 80. The "'mere utterance of an . . . epithet which engenders offensive feelings in an employee'" does not affect the conditions of employment to a sufficiently significant degree to violate Title VII. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)(citing *Rogers v. Equal Emp't Opportunity Comm'n,* 454 F.2d 234, 238 (5th Cir. 1972)), *disapproved on other grounds in Equal Emp't Opportunity Comm'n v. Shell Oil Co.,* 466 U.S. 54 (1984)). "Title VII was 'not designed to purge the workplace of vulgarity,' for a certain amount of 'vulgar banter, tinged with sexual innuendo' is inevitable in the modern workplace . . . ." *Barnett,* 2006 WL 3545025 at \*9 (citing *Bakerville v. Culligan Intern. Co.,* 50 F.3d 428, 430-31 (7th Cir. 1995)). Plaintiff has not produced sufficient summary judgment evidence of gender motivated conduct so severe and pervasive as to amount to a change in the terms and conditions of her employment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Her Title VII hostile work environment claim should be dismissed.

    3.    <u>Title VII Retaliation Claim</u>

It is a violation of Title VII for employers to retaliate against employees who complain about discrimination. *Nichols-Davis v. Cmty. Eldercare Servs., LLC,* No. 1:09-cv-664-LG-RHW, 2010 WL 3167855, \*6 (S.D. Miss. Aug. 9, 2010). An employee has engaged in protected activity when she has "opposed any practice made an

unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation with only circumstantial evidence, a plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). The standard for adverse employment actions in the context of retaliation is broader than for discrimination. *Burlington,* 548 U.S. at 68. An "adverse employment action" for the second prong, does not require an "ultimate employment decision." *Id.* For purposes of a retaliation claim, "[a]n adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (quoting *Aryain,* 534 F.3d at 484).

"If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *Aryain,* 534 F.3d at 484. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport,* 492 F.3d 551, 557 (5th Cir. 2007). If the employer satisfies this burden, the plaintiff then bears the burden of proving that the employer's proffered reason

is not true but is instead pretext for the actual retaliatory reason. *Id.* "To carry her ultimate burden . . ., Plaintiff must prove, by a preponderance of the evidence, that 'the adverse employment action . . . would not have occurred "but for" [the] protected conduct.'" *Stallworth v. Singing River Health Sys.,* No. 1:10-cv-123-HSO-JMR, 2011 WL 2532473, *6 (S.D. Miss. June 24, 2011)(citing *Strong v. Univ. Healthcare Sys., LLC,* 482 F.3d 802, 806 (5th Cir. 2007)). "[T]he plaintiff does not have to show that the protected activity is the only cause of her termination." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 583 (5th Cir. 2006). "The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Id.*

"[C]lose timing between the protected activity and adverse employment action may provide evidence of a causal link." *Schroeder v. Greater New Orleans Fed. Credit Union,* 664 F.3d 1016, 1025 (5th Cir. 2011). However "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case . . . . *Id.* "Title VII's protection against retaliation does not permit EEO[] complainants to disregard work rules or job requirements." *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington,* 548 U.S. at 68.

Plaintiff lodged five EEO complaints against her supervisors during the

approximately two years that she was employed in the Mitigation Division. Under the authority of these same supervisors, she was subjected to numerous disciplinary reprimands and poor performance evaluations and allegedly treated more harshly than other employees under similar circumstances. She was twice denied a promotion, and her position was the only position in the Biloxi Mitigation Department that was not renewed.

Defendant has offered a number of non-retaliatory reasons for the actions it took against Plaintiff, and there is evidence in the record indicating that Plaintiff indeed had various performance and disciplinary problems and numerous conflicts with her supervisors and coworkers. Without weighing the evidence and making credibility determinations, however, the Court cannot conclude that the adverse employment actions taken against Plaintiff were wholly unrelated to her EEO activity. The actions occurred during the same time frame as Plaintiff's EEO activity, and there is evidence of conduct and remarks in the record from which a reasonable juror might infer retaliation. Construing all disputed facts in Plaintiff's favor, the Court finds that a genuine issue of material fact exists as to whether a causal connection existed between Plaintiff's EEO activity and the adverse employment actions taken against her. Plaintiff's retaliation claim should not be dismissed.

    4. <u>Title VII Constructive Discharge Claim</u>

"It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l*

*Ass'n of Gov. Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 711 (5th Cir. 1994). In her Response, Plaintiff argues that she was constructively discharged. This claim is arguably implied in her Complaint. Plaintiff did not, however, allege constructive discharge during the EEO administrative proceedings. Because she did not, she failed to exhaust her administrative remedies with respect to this claim, and it should be dismissed. *Lesure v. Home Depot U.S.A., Inc.,* No. 2:05-cv-2187-LG-JMR, 2007 WL 4292574, *5 (S.D. Miss. Dec. 5, 2007).

  5. <u>42 U.S.C. § 1981 Claims</u>

Plaintiff's Complaint also seeks relief pursuant to 42 U.S.C. § 1981. "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir. 1996). Because Plaintiff's § 1981 claims arise out of the same facts as her Title VII claims against her federal employer, Title VII is the preemptive remedy. *Id.* Section 1981 does not provide an independent ground for relief, and Plaintiff's § 1981 claims should be dismissed. *Id.*; *see Sapp v. Potter,* 413 F. App'x 750, 753 (5th Cir. 2011).

  6. <u>Intentional and/or Negligent Infliction of Emotional Distress Claims</u>

Plaintiff pleaded claims for "intentional and/or negligent infliction of emotional distress." Pl.'s Compl. [1] at p. 6. These claims are pleaded separately from her Title VII and 42 U.S.C. § 1981 claims and are presumably state law claims. "Title VII's preemptive reach in the federal-employment context extends to both statutory and common-law claims." *Stamper v. Shinseki,* No. 3:11cv546-DPJ-FKB, 2012 WL 5286953, *6-7 (S.D. Miss. Oct. 24, 2012)(collecting cases); *see Smith*

*v. Harvey,* 265 F. App'x 197, 200 (5th Cir. 2008)(affirming dismissal of § 1981 and state tort claims as preempted by Title VII); *Hampton v. Internal Revenue Serv.,* 913 F.2d 180, 182-83 (5th Cir. 1990)(affirming dismissal of state tort claims as preempted by Title VII). Plaintiff's state law claims for intentional and negligent infliction of emotional distress are preempted by Title VII and should be dismissed.

### 7. FOIA Claim and Punitive Damages

Plaintiff pleaded a claim pursuant to the FOIA and also sought punitive damages. Pl.'s Compl. [1] at pp. 6-7. In her Response to Defendant's Motion for Summary Judgment, Plaintiff "acknowledges that she cannot get punitive damages" and that she is "no[t] seeking damages as to the Freedom of Information Act [claim]." Pl.'s Resp. [39]. Her FOIA claim and request for punitive damages should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Title VII disparate treatment claim and Title VII retaliation claim will proceed. Her Title VII hostile work environment claim, Title VII constructive discharge claim, 42 U.S.C. § 1981 claims, state law claims for intentional and negligent infliction of emotional distress, FOIA claim, and request for punitive damages should be dismissed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [32], filed by Defendant Janet Napolitano, Secretary, Department of Homeland Security, is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's Title VII disparate treatment claim and Title VII retaliation

claim will proceed.  Her Title VII hostile work environment claim, Title VII constructive discharge claim, 42 U.S.C. § 1981 claims, state law claims for intentional and negligent infliction of emotional distress, FOIA claim, and request for punitive damages are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 26th day of February, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE